IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
 )
    Plaintiff, )    Civil Action No.:
 )
    v. )    **COMPLAINT**
 )
LORNAMEAD, INC. AND REMEDY )    **JURY TRIAL DEMANDED**
INTELLIGENT STAFFING, LLC )
    Defendants. )
_____)

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party David C. Gaiser II, who was adversely affected by such practices.  As alleged with greater particularity in paragraphs 20-37 below, the Equal Employment Opportunity Commission ("Commission") alleges that Defendants failed to provide Charging Party with a reasonable accommodation and instead terminated his employment because of his disability in violation of the ADA.

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1)

4.      Defendant Lornamead, Inc. ("Lornamead") is a Delaware corporation headquartered in New York, New York.  Lornamead manufactures and distributes hair care, skin care, oral care, and bath products to retailers throughout North America.

5.      At all relevant times, Lornamead has continuously been doing business in the State of New York and the Town of Tonawanda, and has continuously had at least 15 employees.

6.      At all relevant times, Lornamead has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

7.      At all relevant times, Lornamead has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

8.      Defendant Remedy Intelligent Staffing, LLC ("Remedy") is a limited liability company formed in the State of California and headquartered in Santa Barbara, California. Remedy is an employment agency that provides temporary staffing, temp-to-hire, and direct hire staffing services to various industries throughout the United States.

2

9.      At all relevant times, Remedy has continuously been doing business in the State of New York and the Town of Tonawanda, and has continuously had at least 15 employees.

10.     At all relevant times, Remedy has procured for employees opportunities to work for a covered employer, or has procured employees for a covered employer, within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(c) of Title VII, 42 U.S.C. § 2000e(c).

11.     At all relevant times, Remedy has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7).

12.     At all relevant times, Remedy has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

13.     At all relevant times, Lornamead and Remedy (collectively, "Defendants") were joint employers of Charging Party by virtue of their common control over the terms, conditions, and privileges of Charging Party's employment.

## ADMINISTRATIVE PROCEDURES

14.     More than thirty days prior to the institution of this lawsuit, Charging Party David C. Gaiser II filed charges of discrimination with the Commission alleging violations of the ADA by Defendants.

15.     On February 22, 2018, the Commission issued Letters of Determination to Defendants notifying them that the Commission found reasonable cause to believe that Defendants violated the ADA and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

3

16.     The Commission engaged in communications with Defendants to provide

Defendants the opportunity to remedy the unlawful employment practices described in the

Letters of Determination.

17.     The Commission was unable to secure from Defendants a conciliation agreement

acceptable to the Commission.

18.     On July 9, 2018, the Commission issued to Defendants Notices of Failure of

Conciliation advising them that the Commission was unable to secure from Defendants a

conciliation agreement acceptable to the Commission.

19.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

20.     Since at least June 2016, Defendants have engaged in unlawful employment

practices in violation of Section 102(a), (b)(2), and (b)(5)(A) and (B) of Title I of the ADA, 42

U.S.C. §§ 12112(a), (b)(2) and (b)(5)(A) and (B), by failing to provide Charging Party with a

reasonable accommodation for his disability and instead terminating Charging Party's

employment because of his disability.

21.     Charging Party is a qualified individual with a disability under Sections 3 and

101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).  Charging Party has a kidney impairment

that substantially limits major bodily functions, including his body's ability to eliminate waste

from his blood.

22.     Charging Party began working for Remedy in June 2013 and was assigned to

work as a general laborer at Lornamead's Tonawanda, New York facility shortly thereafter.

Lornamead was Charging Party's first and only assignment through Remedy.

4

23.     As a general laborer, Charging Party was assigned to work on various production lines where he performed tasks such as filling bottles, shrink-wrapping packages of toothpaste, and packing cartons of toothpaste and whitening kits into boxes for delivery to Lornamead's customers.  Charging Party successfully performed the duties of a general laborer at Lornamead for nearly three years, until his termination in June 2016.

24.     In or around 2014, Charging Party was diagnosed with autosomal dominant polycystic kidney disease, a chronic condition characterized by the growth of multiple cysts in the kidneys.

25.     Charging Party performed his duties at Lornamead without requiring or requesting an accommodation until 2016, when his condition worsened.

26.     On June 1, 2016, Lornamead assigned Charging Party to operate an L-Bar sealing machine, which is used to shrink-wrap packages of toothpaste and other products manufactured and distributed by Lornamead.

27.     Lornamead had both automatic and manual L-Bar machines, and Charging Party typically operated the automatic model.  On June 1, 2016, however, Charging Party was assigned to the manual machine because the automatic machine was being used by another department.

28.     Unlike the automatic version, the manual L-Bar machine is not equipped with a conveyer belt to move the product through the machine.  As a result, Charging Party had to retrieve and line up individual boxes of toothpaste and manually feed them into the machine, which required continual twisting and bending with few breaks.  The repetitive movements aggravated Charging Party's disability and caused him severe pain.

29.     Charging Party asked Lornamead for permission to use a chair to minimize the degree of bending and twisting required to operate the manual L-Bar machine.  Lornamead refused Charging Party's request for a chair.

30.     After approximately three or four hours operating the machine, Charging Party's pain became intolerable and he requested to be assigned to a task that did not require continuous bending and twisting.  The Lornamead shift supervisor assigned Charging Party to another manual machine that required repeated bending and twisting.

31.     The Lornamead shift supervisor finally assigned Charging Party to an automatic cartoner machine, which Charging Party was able to operate without incident.  The shift supervisor warned Charging Party that the next time he "refused" to complete an assignment, he would be fired.

32.     Lornamead notified Remedy that Charging Party had been unable to complete his assigned task of operating the manual L-Bar machine during his shift and that, if it happened again, Charging Party would "be asked to punch out and go home."

33.     Remedy called Charging Party and directed him to get an updated note from his doctor listing his medical restrictions.  Remedy suspended Charging Party without pay pending receipt of the information.

34.     On June 6, 2016, Charging Party gave Remedy's onsite manager a note from his doctor, which explained that bending and twisting "repeatedly" may worsen Charging Party's symptoms, and recommended that Charging Party refrain from activity that required "extreme" bending, twisting, or lifting, which could predispose him to a cyst rupture.

35.     When Remedy's onsite manager saw the note, she told Charging Party there was no way to accommodate him.  Charging Party explained that he could do any of the jobs in

production, that he could use a chair while operating the manual L-Bar machine, or that he could

work in the assembly department.  The onsite manager said she would confer with Lornamead,

but instructed Charging Party not to report for work until he heard from her.

36.     Defendants failed to provide any of the accommodations suggested by Charging

Party or any other accommodation.  Instead, and without engaging in any further discussion with

Charging Party about his accommodation request, Lornamead directed Remedy to end Charging

Party's assignment at Lornamead.

37.     After Charging Party was terminated from Lornamead, he contacted Remedy

several times in person and by phone to inquire about other assignments.  Remedy never placed

Charging Party with another client, thereby terminating his employment with Remedy.

38.     The effect of the practices complained of in paragraphs 20-37 above has been to

deprive Charging Party of equal employment opportunities and otherwise adversely affect his

status as an employee because of his disability.

39.     The unlawful employment practices complained of in paragraphs 20-37 above

were and are intentional and were carried out with malice or with reckless indifference to the

federally protected rights of Charging Party.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendants, their officers, agents,

servants, employees, attorneys, and all persons in active concert or participation with them, from

failing to provide reasonable accommodations to individuals with disabilities or terminating

employees on the basis of disability.

B.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and that eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendants to make whole Charging Party by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to hiring, placement, reinstatement, or front pay.

D.      Order Defendants to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

E.      Order Defendants to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, humiliation, and inconvenience, in amounts to be determined at trial.

F.      Order Defendants to pay Charging Party punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G.      Grant such other further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.


Dated:  August 1, 2018
       Buffalo, New York

Respectfully submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMET
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein@eeoc.gov

NORA CURTIN
Supervisory Trial Attorney
nora.curtin@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004

/s/  Elizabeth Fox-Solomon
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Buffalo Local Office
6 Fountain Plaza, Suite 350
Buffalo, New York 14202
Tel:  716-551-3393
Fax:  716-551-4387
Email:  elizabeth.fox-solomon@eeoc.gov